# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## MIAMI DIVISION

### CASE NO. 19-22553-CIV-MORENO/GOODMAN

LAS ORIGINALES PIZZA INC.,
a Florida corporation and
MONTE PIZZA INC., a
Florida corporation,

      Plaintiffs,

v.

BATABANO GROUP, INC.,
a Florida corporation; BATABANO
GROUP II, INC., a Florida corporation;
BATABANO GROUP III, INC.,
a Florida corporation; LUIS PEÑA,
individually; and YAMILIN MEDEROS,
individually,

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON DEFENDANT BATABANO I'S SUMMARY JUDGMENT MOTION

      In this trademark-infringement case, Las Originales Pizza Inc. and Monte Pizza

Inc. (collectively, "Plaintiffs") sued Batabano Group, Inc. ("Batabano I"), Batabano Group

II, Inc. ("Batabano II"), Batabano Group III, Inc. ("Batabano III"), Luis Peña ("Peña") and

Yamilin Mederos (collectively, "Defendants"), alleging that Defendants infringed on the

"MONTES DE OCA" and "MONTES DE OCA ORIGINAL PIZZA CUBANA (ESTILO

VARADERO)" marks (collectively, the "Marks").

Batabano I filed a summary judgment motion, Plaintiffs filed an opposition response, and Batabano I filed a reply. [ECF Nos. 58; 70; 80]. Batabano I also filed a statement of facts, Plaintiffs filed a response to the statement of facts, and Batabano I filed a reply [ECF Nos. 59; 71; 75].

Senior United States District Judge Federico A. Moreno referred[1] to the Undersigned Batabano I's summary judgment motion for a Report and Recommendations. [ECF No. 83]. For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **deny** Batabano I's summary judgment motion.

I.      **Background**

Plaintiffs allege the following causes of action against all Defendants: false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count II); Florida common law infringement (Count III); Florida common law unfair competition (Count IV); federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count V); and Florida registered mark

---

[1]     Judge Moreno also referred to the Undersigned the summary judgment motions [ECF Nos. 56; 60; 99] filed by Plaintiffs, Luis Peña, and Yamilin Mederos. *See* Referral Orders [ECF No. 83; 101]. The Undersigned will address those motions in separate Reports and Recommendations.

infringement in violation of Fla. Stat. § 495.131 (Count VI). *See* Amended Complaint [ECF No. 37].

Defendant Batabano I seeks summary judgment in its favor on the following grounds: (1) at all times, it was authorized to use the Marks and (2) it made no profits during the relevant time period. [ECF No. 58].

## II.    Undisputed Facts[2]

1.    Batabano I was a Florida Profit Corporation, incorporated on June 19, 2009, as "Batabano Group, Inc."

2.    The principal address for Batabano I at all relevant times was 455 Hialeah Drive, Hialeah, Florida 33010.

3.    On or about June 2009, Manuel Montes de Oca ("Senior") and Maria C. Gonzalez ("Gonzalez"), as sellers, entered into an As Is Purchase and Sale Agreement ("2009 Agreement") with Alexis Mederos, as buyer, whereby Alexis Mederos purchased

---

[2]    The facts are generated from the paragraphs in the statement of facts, the response to the statement of facts, or the reply to Plaintiffs' additional facts which Batabano I expressly agreed are undisputed. [ECF Nos. 59; 71; 75]. For those purported facts which the opposing party classified as partly disputed, the Undersigned includes only the undisputed portions. The Undersigned will retain the paragraph numbering used by the parties. The abbreviation, "N/A," means that the paragraph is disputed. The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

If a party argued that a fact was disputed but did not provide record evidence to support the contention, then I deemed the fact to be undisputed if otherwise supported by record evidence.

the restaurant known as "Montes de Oca Original Pizza Cubana" located at 455 Hialeah Drive, Hialeah, Florida 33010. [ECF No. 59-3]. The 2009 Agreement stated, in part, that "[s]o long as the existing lease is in effect, the Buyer shall use the name 'Montes de Oca Pizza Cubana' for the Restaurant" and that "[t]he Buyer further agrees to purchase from the Seller the pizza shells and the garlic bread, for the first two years" at certain set prices. *Id.* at pp. 3-4.

4.      On June 19, 2009, Alexis Mederos incorporated Batabano Group, Inc., with the Florida Department of State, as a Florida Profit Corporation.[3]

5.      N/A[4]

_____

[3]      Plaintiffs address only the portion of paragraph 4 which states that "Alexis Mederos was at all relevant times Defendant Luis Peña's business partner and signed the [2009 Agreement] for the benefit of Mr. Peña." [ECF No. 59, ¶ 4; ECF No. 71, ¶ 4]. Plaintiffs have filed excerpts of Alexis Mederos' deposition transcript wherein he describes Peña as an acquaintance, denies that he was partners with Peña, denies that he ever conducted any business with Peña, and denies that he ever entered into any contracts with Peña. [ECF No. 71, ¶ 4 (citing ECF No. 71-1, pp. 13:9-14, 30:5-15]. Therefore, whether Alexis Mederos was a business partner of Peña or signed the 2009 Agreement for the benefit of Peña is a disputed fact.

[4]      Defendants assert that "[a]t all relevant times, Luis Peña conducted himself as an officer of the corporation and had full authority to make decisions and conduct business on behalf of the corporation." [ECF No. 59, ¶ 5]. However, Plaintiffs point out that Peña does not appear as an officer, director, shareholder, or registered agent for Batabano I in 2009 or 2010. [ECF No. 71, ¶ 5]. Plaintiffs also note that Batabano I's tax returns for 2009 and 2010 identify Alexis Mederos as the sole shareholder. *Id.* However, tax returns for 2009 and 2010 were not included in Plaintiffs' filing. [ECF No. 71].

In any event, in light of the 2009 and 2010 filings with the Florida Department of State listing only Alexis Mederos in any capacity, there is a genuine factual dispute as to

6.      On July 1, 2009, an Assignment and Assumption of Lease was executed by and between Essex Shopping Center, LLC, as Landlord, Montes de Oca Original Pizza Cubana Hialeah, Inc., as assignor, and Batabano Group, Inc. d/b/a Montes de Oca Original Pizza Cubana (a/k/a. Batabano I), as assignee, for the lease governing the property at 455 Hialeah Drive, Hialeah, Florida 33010, in connection with the 2009 Agreement. The Assignment and Assumption of Lease was signed by Senior and Gonzalez in their capacity as President and Vice-President, respectively, of Montes de Oca Original Pizza Cubana Hialeah, Inc.[5]

7.      Batabano I was administratively dissolved on September 25, 2020.

8.      On September 14, 2021, Plaintiffs filed their Amended Complaint [ECF No. 37] against all Defendants, including Batabano I, for federal and state trademark infringement and related causes of action.

9.      Plaintiffs have asserted they are not seeking actual damages. Instead, Plaintiffs seek disgorgement of Batabano I's profits, punitive damages, permanent injunctive relief, and an award of reasonable attorneys' fees and costs.

10.     The Damage Period applied by Batabano I's forensic accounting expert

---

whether "at all relevant times", Peña acted as an officer of Batabano I and had full authority to make decisions and conduct business on behalf of this entity.

[5]      Plaintiffs assert that they dispute the portion of paragraph 6 which states that "Mr. Mederos performed the aforementioned transaction at the direction and for the benefit of Mr. Peña." [ECF No. 71, ¶ 6]. However, this fact is not in paragraph 6 of Batabano I's statement of facts [ECF No. 59, ¶ 6].

Daniel J. Gallogly ("Gallogly") runs from June 21, 2015, the beginning of the statute of limitation period measured four years before Plaintiffs filed their initial Complaint on June 20, 2019, and continuing through December 31, 2020. Batabano I ceased operations in 2019 and its only activity in 2020 was the disposal of its equipment.[6]

11.     It is Gallogly's opinion that Batabano I earned no profits from June 21, 2015, to December 31, 2020.[7]

12.     Plaintiffs have disclosed no experts and, specifically, have not disclosed any expert to rebut the findings and/or opinions of Gallogly.

**Plaintiffs' Additional Facts**

13.     The 2009 Agreement was executed between Senior, Gonzalez, and Alexis Mederos.

14.     The 2009 Agreement does not name Batabano I or Peña as contracting

---

[6]     Plaintiffs address paragraph 10 by stating that "[d]eposits in Batabano I's Grove Bank & Trust account for the year 2020 amount to $30,510.39." [ECF No. 71, p. 10]. However, these bank statements provide no detail concerning the nature of these deposits. Gallogly's report cites Batabano I's 2020 Federal Income Tax Return, Form 4797 as the source of his statement that "Batabano I ceased operations in 2019 and its only activity in 2020 was the disposal of its equipment." [ECF No. 58-8, p. 7]. For purposes of the instant motion, the Undersigned will deem this fact undisputed.

[7]     Plaintiffs take issue with the accuracy of Gallogly's calculation of profits. However, the statement is factually true. It *is* Gallogly's opinion that Batabano I earned no profits from June 21, 2015 to December 31, 2020.

parties.[8]

15.     Peña was not present for the execution of the 2009 Agreement.

16.     The 2009 Agreement includes a clause stating that "[t]he parties cannot assign this Agreement or any of their rights under this Agreement except by operation of law to their personal representatives or heirs in the event of their death, incapacity, or dissolution . . . ." [ECF No. 59-3, p. 5].[9]

17.     During his deposition, in response to a question about the nature of his business relationship with Peña, Alexis Mederos stated, "Nothing. I leave clear the fact that we are acquaintances. We are not partners . . . I don't have a partner." [ECF No. 71-1, p. 13:9-14].[10]

---

[8]     Defendants do not dispute paragraph 14 but seek to add that "Alexis Mederos was at all relevant times acting at the direction of, and in his capacity as business partner to, Luis Peña." [ECF No. 75, ¶ 14]. For the reasons discussed above, whether Alexis Mederos was Peña's business partner is a disputed fact.

[9]     Defendants do not directly dispute that the 2009 Agreement contains this provision. [ECF No. 75, ¶ 16]. Instead, they argue that this "provision was waived when [Senior] and . . . Gonzalez, on behalf of Montes de Oca Original Pizza Cubana Hialeah, Inc., in their capacities as President and Vice-President of the Company, respectively, executed the Assignment and Assumption of Lease with Batabano I." *Id.* The Undersigned will address Defendants' waiver argument below. Paragraph 16 is undisputed.

[10]    Defendants seek to dispute paragraphs 17 and 18 by insisting that at all relevant times, Peña was Alexis Mederos' business partner. [ECF No. 75, ¶¶ 17-18]. As already noted herein, whether Peña and Alexis Mederos were business partners is a disputed fact. Paragraphs 17 and 18 are otherwise undisputed. Moreover, paragraphs 17 and 18 concern the testimony Alexis Mederos provided during his deposition. Defendants have not

18.     During his deposition, Alexis Mederos denied conducting any business with Peña, entering into any contracts with Peña, or transferring any restaurants to Peña. *Id.* at p. 30:5-15.[11]

19.     N/A[12]

20.     For several years, Peña made payments to Senior for food products.

21.     In early 2017, Peña and his companies ceased purchasing food products from Senior.

22.     Defendants continued to use the Marks despite no longer purchasing products from Senior.[13]

23.     N/A

24.     Deposits in Batabano I's Grove Bank & Trust account for the year 2020

---

argued that the deposition transcript fails to accurately reflect Alexis Mederos' testimony.

[11]     Plaintiffs also seek to include that Peña never made any payments to Mr. Mederos. [ECF No. 71, ¶ 18]. In paragraph 18, Plaintiffs cite pages 29 and 30 of Mr. Mederos' deposition transcript. This fact is not on page 30 of the transcript and Plaintiffs did not file page 29. Therefore, the Undersigned did not include this fact.

[12]     The parties dispute the existence of a revokable and non-exclusive *oral* license granted by Senior to Peña, Batabano I, and Batabano II in 2013, provided that Peña purchased food products from Senior.

[13]     Defendants dispute that anyone on behalf of Plaintiffs objected to the use of the Marks by the corporate defendants *before* September 6, 2018 and cite to the affidavit of Peña attesting to this fact. [ECF No. 75, ¶ 22]. Therefore, the introductory portion of paragraph 22, which states that "[d]espite protests from Manolo and Gonzalez in 2017" is deemed disputed and has been omitted.

amount to $30,510.39.[14]

25.     In 2009, Shoma Retail LLC, Senior, and Gonzalez entered into a lease agreement for the 455 Hialeah Drive restaurant location.

26.     In 2015, Shoma Retail LLC entered into a lease agreement with Batabano II for the same 455 Hialeah Drive restaurant location.

27.     Batabano Bakery Inc. is owned by Peña. It is a major vendor of Batabano I and supplied Batabano I with food products used by Batabano I to operate its restaurant.

28.     During his deposition in *Montes de Oca Jr. v. Las Originales Pizza, Inc.*, Case No. 2018-041326-CA-01 in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Florida Litigation"), Peña explained his reason for purchasing the bakery from Manuel Montes de Oca Jr. ("Junior") as follows: "I bought the bakery from him and I sold them [food products] for less than what he used to sell them to me and I make a living." [ECF No. 71-11, p. 62:16-18].

## III.     Applicable Legal Standard

On a motion for summary judgment, the Court must construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on

---

[14]     Defendants attempt to dispute this fact by asserting that "Plaintiffs have failed to cite to any specific portion of the record in support of such notion." [ECF No. 75, ¶ 34]. However, Plaintiffs cite to bank records which reflect deposits totaling at least $30,510.39. This fact is therefore deemed undisputed.

a claim only if it is shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." *See Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011).

> The Supreme Court has explained the summary judgment standard as follows:
>
> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).

The Court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Id.* at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed. R. Civ. P. 56(c). To meet this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## IV.    Analysis

Batabano I raises two arguments in its summary judgment motion: (1) Plaintiffs cannot show trademark infringement because Batabano I was authorized to use the Marks and (2) Batabano I made no profits during the relevant time period. The Undersigned will address these arguments in turn.

### A.    Alleged Authorized Use

Batabano I seeks summary judgment in its favor on the issue of liability. According to Batabano I, it cannot be liable for infringement because, at all relevant times, Batabano

I was authorized to use the Marks. [ECF No. 58, p. 4]. Batabano I bases this alleged

authorized use on the following facts:

> On or about June 2009, Senior and . . . Gonzalez, as sellers, entered into . . .
> [the 2009] Agreement with Alexis Mederos, as buyer, whereby Alexis
> Mederos purchased the restaurant known as "Montes de Oca Original
> Pizza Cubana" located at 455 Hialeah Drive, Hialeah, Florida 33010, and,
> was, among other things, allowed to use the name of "Montes de Oca
> Original Pizza Cubana" until [the] expiration of the lease. [Alexis] Mederos
> was at all relevant times the business partner of Luis Peña and acted at the
> direction and supervision of Mr. Peña in connection with this transaction.
> On June 19, 2009, Alexis Mederos incorporated Batabano [I], with the
> Florida Department of State, as a Florida Profit Corporation. At all relevant
> times, Mr. Peña conducted himself as an officer of the corporation and had
> full authority to make decisions and conduct business on behalf of the
> corporation.
>
> On July 1, 2009, an Assignment and Assumption of Lease was executed by
> and between Essex Shopping Center, LLC, as Landlord, Montes de Oca
> Original Pizza Cubana Hialeah, Inc., as assignor, and Batabano Group, Inc.
> d/b/a Montes de Oca Original Pizza Cubana (a.k.a. Batabano I), as assignee,
> for the lease governing the property at 455 Hialeah Drive, Hialeah, Florida
> 33010, in connection with the [2009] Agreement.
>
> Notably, this Assignment and Assumption of Lease was signed by [Senior],
> and . . . Gonzalez in their capacities as President and Vice-President,
> respectively, of Montes de Oca Original Pizza Cubana Hialeah, Inc. Clearly,
> Plaintiffs knew, and did not object, to Batabano I assuming the lease and all
> provisions contained within the lease, in place of [Alexis] Mederos
> individually. (Notably, the [2009] Agreement does not preclude an
> assignment of the purchaser's rights[)].

*Id.* at pp. 4-5 (citation to the record omitted).

Batabano I reasons that "the express language of the contract and subsequent

assumption of the lease provided [sic] Batabano I to, at all relevant times, utilize the

subject [M]arks. Plaintiffs cannot, therefore, prove trademark infringement." *Id.* at 5.

At the outset, the Undersigned notes that Batabano I cites no case law for its contention that notwithstanding the assignability language of the 2009 Agreement, that a separate agreement (the July 1, 2009 Assignment and Assumption of Lease) somehow establishes that Alexis Mederos could assign his rights under the 2009 Agreement. The Undersigned is not deciding whether Alexis Mederos could or could not assign his rights under the 2009 Agreement. Instead, the Undersigned is merely pointing out that Batabano I has not engaged in any legal analysis of this issue. Batabano I merely states that "the [2009] Agreement does not preclude an assignment of the purchaser's rights," [ECF no. 58, p. 5], without engaging in any analysis (legal or otherwise) of assignability clauses and the impact (if any) of the contracting parties' subsequent actions (i.e., entering into a lease agreement).

Along the same vein, Batabano I raises the issue of waiver in its reply to Plaintiffs' additional facts: "the provision [concerning the assignment of rights in the 2009 Agreement] was waived when [Senior] and . . . Gonzalez, on behalf of Montes de Oca Original Pizza Cubana Hialeah, Inc., in their capacities as President and Vice-President of the Company, respectively, executed the Assignment and Assumption of Lease with Batabano I. [ECF No. 75, ¶ 16]. There is *no* case law or legal analysis in Batabano I's motion, reply, statement of undisputed material facts, or reply to Plaintiffs' additional facts addressing the alleged waiver of contractual rights through the execution of a separate agreement (the lease).

Batabano I is asking for summary judgment in its favor, without doing any of the legal legwork. "The Court will not perform the parties' summary judgment research for them." *Sideridraulic Sys. SpA v. Briese Schiffahrts GmbH & Co. KG*, No. CIV.A. 10-0715-WS-M, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (finding summary judgment briefing inadequate where "movants' principal memorandum of law provide[d] only the most cursory treatment of COGSA, proffering generalities as to what the statute purportedly means with no supporting citations to authority and sometimes inaccurate citations to the statute itself"); *see also Vigor v. City of Saraland*, No. CIVA 07-0733-WS-M, 2008 WL 5225821, at *6, n.22 (S.D. Ala. Dec. 11, 2008) ("In conducting the requisite summary judgment analysis, this Court will not perform plaintiff's research for him or endeavor to articulate arguments that plaintiff could have raised, but did not.").

Additionally, the salient facts on which Batabano I bases its authorized use argument are actually *disputed* facts. Whether Alexis Mederos was Peña's business partner, acted on behalf of Peña, and signed the 2009 Agreement for the benefit of Peña are contested facts in the instant case. Plaintiffs have filed excerpts of Alexis Mederos' deposition transcript wherein he describes Peña as an acquaintance, denies that he was partners with Peña, denies that he ever conducted any business with Peña, and denies that he ever entered into any contracts with Peña. [ECF No. 71, ¶ 4 (citing ECF No. 71-1, pp. 13:9-14, 30:5-15)].

14

Moreover, whether, *at all relevant times*, Peña conducted himself as an officer of Batabano I with full authority to make decisions and conduct business on behalf of Batabano I is also disputed. Plaintiffs have pointed out that Peña does not appear as an officer, director, shareholder, or registered agent for Batabano I in 2009 or 2010. [ECF No. 71, ¶ 5].

In its reply, Batabano I argues that whether Alexis Mederos was "in a business relationship with Mr. Peña" is not material to the issue of "whether Defendant Batabano [I], entered into the [2009 Agreement] that authorized Batabano I to use the subject [M]arks[.]" [ECF No. 80, p. 4]. The problem with this argument is that there is no mention of Batabano I in the 2009 Agreement [ECF No. 59-3] (the contracting parties are Alexis Mederos, Senior, and Gonzalez) and, as noted above, Defendants have not bothered to engage in any legal analysis concerning the assignability of contractual rights from Alexis Mederos to Batabano I and/or Peña. The facts on which Batabano I seeks to base its authorized use argument *are* disputed facts.

For their part, Plaintiffs seek to rely on a purported *oral* license allegedly granted by Senior to Peña, Batabano I, and Batabano II in 2013 and subsequently revoked in 2017. [ECF No. 70, pp. 1-2]. Batabano I disclaims any reliance on an oral license,[15] then proceeds to cite to the terms of the *written* 2009 Agreement to support its argument that Batabano

---

[15]     *See* [ECF No. 80, p. 2 ("Defendant's use of the subject marks was neither pursuant to an implied oral license nor conditioned on Batabano I continuing to purchase food products from Senior.")].

I's use of the Marks was not contingent upon the continued purchase of food products from Senior. [ECF No. 80, p. 2].

The fact that the parties cannot agree on whether there was a written license, an oral license, or both further demonstrates that the issue of Batabano I's alleged authorized use of the Marks is not clear enough to support a summary judgment ruling in favor of Batabano I.

And, while "construction of a contract is ordinarily a question of law . . . suitable for summary Judgment," *Central Nat'l Bank v. Palmer*, 806 F. Supp. 253, 256 (M.D.   Fla. 1992), Batabano I (the movant) has not provided the Court with any *legal* analysis on how a contract signed by Alexis Mederos (the 2009 Agreement) conferred rights to Batabano I or how the execution of the July 1, 2009 lease agreement conferred a license to use the Marks upon Batabano I. *See, supra*. Again, the Undersigned is not making any legal determinations on these issues; the Undersigned is merely noting that Batabano I has not met its initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

In sum, Batabano I is not entitled to summary judgment in its favor on the issue of its alleged authorized use of the Marks.

B.    **No Profits**

Additionally, Batabano I seeks to establish that between 2009 and 2020, Batabano I made no profits. [ECF No. 58, pp. 5-7]. Under the Lanham Act, "[the] [p]laintiff has the

16

burden of showing the amount of [the] [d]efendant's sales of the infringing product, while [the] [d]efendant bears the burden of showing all elements of costs of other deductions." *Burger King Corp. v. Pilgrim's Pride Corp.*, 934 F. Supp. 425, 426 (S.D. Fla. 1996) (citing 15 U.S.C. § 1117). Any "[d]oubts concerning deductions must be resolved against the infringer." *Id.* (citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985)).

Batabano I relies on the opinion testimony and report of Defendants' forensic accountant, Daniel J. Gallogly. [ECF No. 58, p. 6 (citing Gallogly's Report)].[16] Batabano I contends that "[t]o date, Plaintiffs have submitted no evidence to contradict the assertions by [Batabano I] or Mr. Gallogly" and notes that Plaintiffs have not retained their own competing expert. *Id.* at 6-7.

Plaintiffs cite to record evidence which, according to Plaintiffs, casts doubt on the accuracy of Gallogly's opinion. [ECF No. 70, p. 4]. For instance, Plaintiffs note that Gallogly relied solely on Batabano I's tax returns without reviewing "Batabano I's accounting records, bank statements, vendor invoices, active lease agreements, cash deposits, or any other potentially relevant document" or verifying the amounts reported in the tax returns. *Id.* at 4.

---

[16]     Plaintiffs sought to exclude Gallogly's "no profits" opinion in a motion *in limine*. [ECF No. 84]. The Undersigned denied Plaintiffs' motion, finding that Plaintiffs' challenges to Gallogly's opinion were more appropriate for cross-examination at trial, rather than a pre-trial ruling excluding this expert testimony. [ECF No. 105].

Plaintiffs also challenge some of the assumptions made by Gallogly in his report, including the amount paid for rent (which the Batabano entity supposedly actually made), Gallogly's assumptions about vendor price increases, his failure to consider that one of Batabano I's major vendors was a bakery owned by Peña, failure to consider the difference between the costs of goods report on the tax returns and the cost of goods reflected in Batabano I's bank records, Gallogly's categorization of certain cost as common business expenses for a restaurant, the inclusion of Peña's salary, the determination that Batabano I earned no income in 2020 even though Batabano I's bank account reflects deposits totaling $30,510.39 that year, and the alleged commingling of personal and business funds by Peña and/or Yamlin Mederos. [ECF No. 70, pp. 4-11].[17]

Batabano I makes much of the fact that Plaintiffs have not hired their own expert: [ECF No. 80, p. 2 ("Plaintiffs have set forth no expert testimony or opinions to refute the findings of [Defendants'] retained forensic accountant, Daniel J. Gallogly, CPA. Plaintiffs instead would like this Court to trust their own non-expert interpretation of [Batabano I]'s financial documents and simply take [Plaintiffs'] word for it.")]; *id.* at 4 ("Plaintiffs'

---

[17]    Plaintiffs also argued that Batabano I's summary judgment motion was "premature" because Defendants belatedly produced bank statements and "suppressed" certain documents, and because Peña's deposition in the instant case had not yet been taken. [ECF No. 70, p. 11]. While that may have been the case in January 2022 when Plaintiffs' response was filed, Plaintiffs have since had ample time to engage in discovery (including taking Peña's deposition) and have not amended the instant response. Therefore, the Undersigned finds that Plaintiffs have had a fair opportunity to respond to the instant motion.

dispute, however, is entirely unsupported by expert testimony and is supported only by Plaintiffs' counsel's interpretation of [Batabano I]'s financial documents."); *id*. at 5 ("This Court should not give credence to Plaintiffs' unsupported and hyper-technical layman's analysis of an expert's opinion."); *id*. at 6 ("Plaintiffs would like for this Court and a jury to accept their own non-expert interpretations of Defendant's financial documents as holding enough merit to refute the findings of a CPA.").

To the extent that Batabano I is suggesting that retaining a competing or rebuttal expert is the price of admission for cross-examining Gallogly's opinion, that argument is not well-taken. Batabano I notes that "Plaintiffs have set forth no case law or evidence that the findings of Mr. Gallogly may be refuted by laymen testimony." [ECF No. 80, p. 2]. However, Batabano I (*as the movant*) has also cited no cases which stand for the proposition that in order to be able to cross-examine an expert, a party must hire its own corresponding expert.

In *Holden v. Nevada ex. rel. Nevada Dep't of Corr.*, for instance, the Court denied the movant's summary judgment motion even though the opposing party did not hire its own rebuttal expert:

> The basis for [the] [p]laintiff's motion is that [the] [d]efendants did not identify a rebuttal expert; therefore, [the] [p]laintiff claims he is entitled to summary judgment on the issue of causation of his skin condition. [The] [p]laintiff's expert's opinion as to the cause of [the] [p]laintiff's skin condition is not a "fact" for purposes of Rule 56 under these circumstances. It is an expert *opinion*. [The] [d]efendants did not identify a rebuttal expert, but they may present fact witnesses whose testimony may contradict the factual predicate giving rise to [the] [p]laintiff's expert's opinions. It is the

province of the jury to determine which factual scenario to believe. *See* Ninth Circuit Model Jury Instruction 1.14. Moreover, [the] [d]efendants may still cross-examine [the] [p]laintiff's expert, and, as [the] [d]efendants' point out, the jury is then free to accept or reject the expert's testimony. *See* Ninth Circuit Model Jury Instruction 2.13.

No. 316CV00064MMDWGC, 2017 WL 4159961, at *3 (D. Nev. Sept. 18, 2017), report and recommendation adopted sub nom. *Holden v. Nevada ex rel Nevada Dep't of Corr.*, No. 316CV00064MMDWGC, 2017 WL 4767672 (D. Nev. Oct. 20, 2017) (emphasis in original).

Here, Plaintiffs have cited to record evidence which undermines Gallogly's underlying assumptions, theories, and calculations. For instance, Plaintiffs have cited to record evidence to support their stated belief that Gallogly's opinion of no profits is not accurate. *See, supra.* Batabano I insists that "Plaintiffs' Response [is] composed of sweeping generalizations and unfounded conspiracy theories[.]" [ECF No. 80, p. 2]. Construing the facts in the light most favorable to Plaintiffs, however, a reasonable jury could find that Gallogly's opinion of no profits is entitled to little or no weight because, for example, it may conclude that the amounts reported on the tax returns were not accurate.

Batabano I's reliance on *Hawthorne v. United States* is not helpful to its position. No. 9:18-CV-80508, 2019 WL 1466741, at *1 (S.D. Fla. Feb. 21, 2019), report and recommendation adopted, No. 9:18-CV-80508, 2019 WL 1466476 (S.D. Fla. Mar. 12, 2019). In *Hawthorne*, the defendant moved for summary judgment based on the report of its own expert which "establishe[d] the standard of care for the removal of kidney stones,"

and determined that the plaintiff's doctor "did not breach the standard of care, and

therefore, any injury [the plaintiff] suffered was not the result of . . . medical negligence."

*Id.* at \*4. The *pro se* plaintiff "did not provide any expert report, let alone one that refuted

[defendant's expert]'s findings. *Id.* at \*5.

In *Hawthorne*, an expert was necessary to establish the standard of care. *Id.* at \*4

("Generally, the standard of care in medical malpractice cases must be determined by

consideration of expert testimony." (quoting *Cagle v. United States*, 2017 WL 6368249, at

\*3 (M.D. Fla. Aug. 3, 2017))). Here, Batabano I acknowledges that it has the burden of

establishing deductions: "a plaintiff is only required to prove the infringing sales at

issue, and **the burden then shifts to the defendant to provide all allowable deductions**

**to reduce that figure to profits**." [ECF No. 58, p. 3 (emphasis added)].

The Court in *Hicks v. United States* distinguished *Hawthorne* on similar grounds:

> Defendant makes too much of the fact that its expert testimony is
> unrebutted. Defendant cites *Hawthorne v. United States*, No. 18-80508, 2019
> WL 1466741 (S.D. Fla. Feb. 21, 2019), for the proposition that "Plaintiff has
> failed to overcome Defendant's showing, and judgment must be entered in
> favor of Defendant." But unlike this case, *Hawthorne* required expert
> testimony on both sides to establish a record as to the standard of care in
> medical malpractice cases. *Hawthorne*, 2019 WL 1466741 at \*4–5. However
> helpful an expert may be to Plaintiff's case, accident reconstruction is not
> an area requiring expert testimony on a professional standard of care or any
> other matter. Plaintiff's lack of expert testimony, therefore, is not fatal to her
> case at summary judgment.

No. 20-CIV-61241-RAR, 2021 WL 5359724, at \*2 (S.D. Fla. Nov. 16, 2021) (citation to the

record omitted).

As the Undersigned observed in the Order denying Plaintiff's motion *in limine* concerning Gallogly:

> Plaintiffs may well be able to mount a substantial attack to Gallogly's opinion that Batabano I made no profits during the relevant time period. The number, subject, and scope of the challenges may actually cause a jury to reject all of Gallogly's opinion wholesale. Alternatively, a jury could accept some of his opinion and disregard other parts, or it might accept all of it.

[ECF No. 105, p. 24]. In any event, the credibility and weight (if any) to assign to Gallogly's opinion should be left to the jury.

In sum, Gallogly's "no profits" opinion should be tested through cross-examination and arguments to the jury.

## V.    Conclusion

For the foregoing reasons, the Undersigned **respectfully recommends** that the Court **deny** Batabano I's summary judgment motion.

## VI.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on July 18,

2022.

 

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record