UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-22553-CIV-MORENO/GOODMAN

LAS ORIGINALES PIZZA INC.,
a Florida corporation and
MONTE PIZZA INC., a
Florida corporation,

       Plaintiffs,

v.

BATABANO GROUP, INC.,
a Florida corporation; BATABANO
GROUP II, INC., a Florida corporation;
BATABANO GROUP III, INC.,
a Florida corporation; LUIS PEÑA,
individually; and YAMILIN MEDEROS,
individually,

       Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT MEDEROS'
<u>SUMMARY JUDGMENT MOTION</u>**

In this trademark-infringement case, Las Originales Pizza Inc. and Monte Pizza

Inc. (collectively, "Plaintiffs") sued Batabano Group, Inc. ("Batabano I"), Batabano Group

II, Inc. ("Batabano II"), Batabano Group III, Inc. ("Batabano III"), Luis Peña ("Peña"), and

Yamilin Mederos ("Mederos," and collectively, "Defendants"), alleging that Defendants

infringed on the "MONTES DE OCA" and "MONTES DE OCA ORIGINAL PIZZA

CUBANA (ESTILO VARADERO)" marks (collectively, the "Marks").

Mederos filed a summary judgment motion, Plaintiffs filed an opposition response, and Mederos filed an optional reply. [ECF Nos. 99; 102; 104]. Mederos also filed a statement of facts and Plaintiffs filed a response to that statement of facts. [ECF Nos. 100; 103].

Senior United States District Judge Federico A. Moreno referred[1] to the Undersigned Mederos' summary judgment motion for a Report and Recommendations. [ECF No. 101]. For the reasons stated below, the Undersigned respectfully recommends that the District Court **deny** Mederos' summary judgment motion.

## I.    Background

Plaintiffs allege the following causes of action against all Defendants: false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count II); Florida common law infringement (Count III); Florida common law unfair competition (Count IV); federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count V); and Florida registered mark infringement in violation of Fla. Stat. § 495.131 (Count VI). *See* Amended Complaint [ECF No. 37].

In her summary judgment motion, Mederos argues she cannot be held personally

---

[1]     Judge Moreno also referred to the Undersigned Plaintiffs, Batabano I, and Peña's summary judgment motions [ECF Nos. 56; 58; 60]. *See* Referral Orders [ECF Nos. 83; 93]. The Undersigned will address those motions in separate Reports and Recommendations.

liable "for the alleged infringement because she was not the moving, acting, conscious force" behind the alleged wrongful conduct." [ECF No. 99, p. 3 (internal quotation marks omitted)]. Plaintiffs counter that Mederos "actively participated in the infringing activity." [ECF No. 102, p. 1].

 As discussed below, genuine issues of material fact still remain and therefore preclude summary judgment for Mederos.

II.     **Undisputed Facts**[2]

**Facts Highlighted by Mederos**

1.     In 1999, Mederos began working as a waitress at the pizzeria located at 4360 N.W. 7th Street, Miami, Florida 33126 (the "Pizzeria").

2.     Mederos has been in a relationship with Defendant Peña for approximately 15 years.

3.     The Purchase Agreement [ECF No. 100-2] reflects that *both* Peña and Mederos purchased the Pizzeria on September 6, 2018.

---

[2]     The facts are generated from the paragraphs in the statement of facts or response to the statement of facts which Plaintiff expressly agreed are undisputed. [ECF Nos. 100; 103]. For those purported facts which the opposing party classified as partly disputed, the Undersigned includes only the undisputed portions. The Undersigned will retain the paragraph numbering used by the parties. The abbreviation, "N/A," means that the paragraph is disputed. The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

4.      Mederos stopped working as a waitress after the purchase of the Pizzeria. She now performs odd jobs like running errands to secure ingredients (i.e., dough, vegetables, pasta, and fruits, etc.), cleans, answers the phone, and occasionally works in the kitchen preparing food.[3]

5.      N/A

6.      At his January 20, 2022 deposition, Peña testified that he was in full control of Batabano III, stating that he "was everything, vice president, treasurer" and that "[Mederos] was put in there in the papers as VP because [Peña] was sick and just in case she needed to take over things."

7.      N/A

8.      N/A

9.      N/A

10.     As compensation for the odds and ends Mederos performs, like running errands, shopping for food supplies, cleaning the restaurant, and preparing food, Mederos receives a weekly salary of $414.00, after taxes.[4]

---

[3]      Plaintiffs state that the facts set forth in this paragraph are disputed. [ECF No. 103, ¶ 4]. However, Plaintiffs do not actually dispute these facts. Instead, they cite *additional* facts which are also included in the "Additional Facts" section of their response to the statement of undisputed facts. *Compare id.* at ¶¶ 4(A)-(J) *with* ¶¶ 11-20. Adding additional facts to purportedly undisputed facts does not transform the undisputed fact into a disputed fact.

[4]      Plaintiffs attempt to dispute this fact by citing Exhibit D to their response to the

**Additional Facts Highlighted by Plaintiffs**[5]

11.     Mederos executed the purchase agreement dated September 6, 2018, as a "Buyer" of the Pizzeria, with Manuel Montes de Oca Jr. ("Junior") as the "Seller."

12.     Mederos and her daughter appear in the assignability clause of the Trademark License Agreement dated May 3, 2018.

13.     Mederos and her daughter appear in the assignability clause of the Sales/Distribution Agreement dated May 18, 2018.

14.     Mederos was authorized to sign corporate checks for Batabano III.

15.     Mederos signed payroll checks from Batabano III's corporate bank account, including payroll checks to herself and Peña.

---

statement of undisputed facts. [ECF No. 103-1, pp. 29-40; 103-2-103-7; 103-8, pp. 1-6]. The Undersigned notes that all the checks made out to "Yamilin Mederos" in Exhibit D are in the amount of her asserted salary, $414.00. [ECF Nos. 103-2, pp. 16-17, 19-20; 103-3, pp. 1, 4-5, 8-12, 103-4, pp. 1-2, 4, 6-11, 13, 15; 103-5, pp. 1, 3, 5-7, 9, 11-14; 106, pp. 1-5, 7, 9, 13-14; 103-7, pp. 1-2, 4-6]. To the extent Plaintiffs are suggesting that at least some of the checks made out to "cash" went directly to Mederos, they cite no support (in the record, or otherwise) for this theory.

[5]     Mederos failed to reply to Plaintiffs' additional facts. The Local Rules provide that:

> All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

S.D. Fla. L.R. 56.1(c). Thus, by operation of Local Rule 56.1(c), Plaintiffs' additional facts are deemed admitted.

16.     Mederos signed checks for suppliers of Batabano III.

17.     Mederos signed Batabano III checks payable to the other Batabano corporations.

18.     Mederos signed Batabano III checks payable to Junior (the purported seller of the Marks at issue), the accountant for the Batabano corporations, and to a government licensing agency.

19.     From 2018 to 2020, Mederos signed numerous checks made to "cash," amounting to at least $156,583.00.

20.     On September 23, 2019, after Mederos was served in the present lawsuit, Peña entered into a Trademark/Purchase Agreement purporting to acquire a 50% interest in the service mark subject of this infringement case. This agreement lists Mederos (and, upon Mederos' incapacitation or death, Mederos' daughter) as a beneficiary for Peña.

## III.     Applicable Legal Standard

On a motion for summary judgment, the Court must construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." *See*

*Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011).

The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).

The Court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Id.* at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the

pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'" *Id*. at 324; *see also* Fed. R. Civ. P. 56(c). To meet this burden, the nonmoving party

"must do more than simply show that there is a metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party

must demonstrate that there is a "genuine issue for trial." *Id.* at 587. An action is void of

a material issue for trial "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party." *Id.*

## IV.    Analysis

"Natural persons, as well as corporations, may be liable for trademark

infringement under the Lanham Act. Because of its very nature a corporation can act only

through individuals. . . . If an individual actively and knowingly caused the infringement,

he is personally liable." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477

(11th Cir. 1991) (internal citations omitted). Thus, "a corporate officer who directs,

controls, ratifies, participates in, or is the moving force behind the infringing activity, is

**personally** liable for such infringement without regard to piercing of the corporate veil."

*Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (emphasis

supplied).

"The individual liability standard does not ask whether the individual

participated or engaged in some infringing act; instead, it asks whether he actively

participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Chanel, Inc.*, 931 F.2d at 1478 n.8 (emphasis in original) (noting that "[m]erely selling the [counterfeit] items cannot turn [a defendant] into a moving, active, conscious force who caused the infringement; if it did, the entire sales force of infringing companies would be personally liable").

Mederos maintains that "[t]here is no record evidence from which a jury could determine that [she] directed, controlled, ratified or was in any way the moving, active, conscious force behind the infringement alleged here." [ECF No. 99, p. 4 (internal quotation marks omitted)]. According to Mederos, she was a mere "laborer" at the Pizzeria and "[a]lthough she appears as [v]ice [p]resident and shareholder of Batabano Group III Inc., she was not involved in the managerial, operational, or financial decisions of running the business, including those pertaining to trademark issues." *Id*. at 4-5.

In other words, Mederos claims she "was an officer in name only and did not engage in the type of control necessary to expose a corporate officer to personal liability for trademark infringement." *Id.* at 5. Moreover, Mederos argues that "[e]ven if [she] were generally aware of the trademarks being used by the company, the law still would not impose personal liability." *Id.* at 4-5. (citing *Garcia v. Gravity Interactive, Inc.*, No. 10-62162-CIV, 2011 WL 13214329, at *3 (S.D. Fla. July 21, 2011)).

Plaintiffs contend that Mederos "actively participated in the infringing activity." [ECF No. 102, p. 1]. Some of the undisputed facts highlighted by Plaintiffs include record

evidence that: (1) Mederos signed the Purchase Agreement [ECF No. 100-2] for the Pizzeria as a "Buyer"; (2) Mederos is listed as vice president in the Articles of Incorporation for Batabano III; (3) Mederos is listed as owner of 50% of the shares in a tax return for Batabano III (with Peña owning the other 50%); (4) Mederos (and in the event of her incapacitation/death, her daughter) was listed as a beneficiary in the September 23, 2019 Trademark/Purchase Agreement signed by Peña purporting to acquire a 50% interest in the subject service mark; and (5) Mederos was authorized to and signed corporate checks from Batabano III's corporate bank account, including payroll checks to herself and Peña, checks to suppliers of Batabano III, checks to other Batabano corporations, checks to Junior, checks to the accountant for several Batabano corporations, checks to a government licensing agency, and checks made out to "cash" totaling approximately $156,583.00. *Id.* at 3-4; [ECF No. 103, ¶¶ 11-20].

In her reply, Mederos accuses Plaintiffs of casting a wide net, noting that under "Plaintiffs' reasoning, every corporate officer with check signing authority would be liable for alleged trademark infringement automatically if they wrote a check on the corporate bank account." [ECF No. 104, p. 1]. Mederos further notes that Plaintiffs have not cited to any deposition testimony (either by Mederos or Plaintiffs' corporate officers) implicating Mederos in the infringement. *Id.* at 2.

According to Mederos, "the record facts reveal that she only engaged in some administrative duties – like signing some checks [and] doing menial labor," and that she

was "the long-time girlfriend of Mr. Pe[ñ]a [.]" *Id.* Mederos notes that Peña "testified that

he put Mr. [sic] Mederos on the corporate paperwork because he was sick and wanted

her to have authority as a successor beneficiary 'just in case.'" *Id.* (citation to the record

omitted). Mederos insists she "never ran the business" and no "trademark license [was]

ever assigned to her." *Id.* at 3 ("Acting as a backup successor beneficiary is not anywhere

close to being the 'moving force' behind the infringing activity.").

The Undersigned agrees with Mederos that *some* of the evidence proffered by

Plaintiffs is insufficient to establish an issue of fact as to whether Mederos could be held

personally liable for the alleged infringement. For instance, Plaintiffs fail to explain how

Peña's listing of Mederos (or even less relevant, Mederos' daughter) as a beneficiary or

successor in certain contracts is salient to the issue at hand: whether Mederos "actively

caused the infringement as a moving, conscious force." *Chanel, Inc.*, 931 F.2d at 1478.

Plaintiffs present no legal authority that an individual can be held personally liable for

infringing conduct by being named as a beneficiary or successor in a contract.

Nonetheless, Mederos is not entitled to summary judgment. The infringement

asserted in the instant case is the alleged unauthorized use of the Marks while operating

the Pizzeria. Batabano III is a closely held corporation, with Peña and Mederos as its only

two shareholders. The fact that Mederos was one of the buyers of the restaurant, that she

is listed as the vice president of Batabano III (the operator of the restaurant), that she is a

50 percent shareholder in Batabano III (equal to Peña), and that she was authorized to

issue corporate checks and in fact did issue corporate checks (including payroll checks

and checks to suppliers) -- considered as a whole -- *is* sufficient to show a genuine issue

of material fact as to whether Mederos "actively caused the infringement as a moving,

conscious force." *Id.* Construing these facts in the light most favorable to Plaintiffs, as the

Court must in addressing the instant motion, a reasonable jury could find that Mederos

was a moving, active, conscious force behind the infringement.

In *Chanel, Inc.*, for instance, the Eleventh Circuit noted that the personal liability of

an individual defendant ("main defendant") had been established as a matter of law

where the main defendant "was the president and chief executive officer" of the

corporate defendant, "purchased the counterfeit goods," "advertised the goods as Chanel

products in local publications," and "operated the showroom from which the goods were

sold." 931 F.2d at 1478.

On the other hand, the Eleventh Circuit determined that genuine issues of material

fact existed as to the co-defendant's liability. *Id.* The appellate court noted there was no

evidence that the co-defendant purchased or promoted any of the counterfeit goods. *Id.*

Moreover, the evidence presented by the plaintiff -- that the co-defendant "looked after

the showroom" while the main defendant was out of town (and during this time may

have sold counterfeit goods), introduced the main defendant to individuals who later

purchased some of the counterfeit goods, sent a fax to the main defendant warning about

the infringement, and removed the counterfeit goods from the showroom -- "[t]aken

together, . . . may [have] be[en] enough from which to infer that [the co-defendant] actively caused the infringement," but was not enough to establish the co-defendant's liability as a matter of law. *Id.* Given the "weak record," the Eleventh Circuit determined that whether the co-defendant "actively caused the infringement as a moving, conscious force [was] . . . a question of fact for the factfinder after trial." *Id.*

Mederos' activities in the instant case fall somewhere in between the main defendant and the co-defendant in *Chanel, Inc.* While she was not the principal player in the alleged infringement (as Plaintiffs' case centers around Peña), she was also not simply a mere employee of the restaurant. In any event, the evidence proffered against Mederos is sufficient to survive summary judgment.

In *Caracol Television, S.A. v. TVmia Int'l Corp.*, No. 16-23486-CIV, 2017 WL 6389719, at \*4 (S.D. Fla. Dec. 13, 2017), the court found that genuine issues of material fact precluded the plaintiffs' summary judgment motion as to one of the individual defendants, Adarvez. The movant had proffered that Adarvez's name was on corporate documents, he had promoted the corporate defendant, had a personal association with the co-defendant, received a salary, and had signature authorization on one of the corporate defendant's bank accounts. Adarvez's testimony, on the other hand, was that "he [did] not in fact exercise any true role with respect to any of the defendant companies." *Id.* Based on this record, the court determined that the plaintiff was not

entitled to summary judgment on the personal liability of Adarvez and the matter should proceed to trial. *Id.*

Mederos' role is comparable to defendant Adarvez in *Caracol Television, S.A.* Mederos is vice president and fifty percent shareholder of Batabano III, she (along with Peña) purchased the Pizzeria which used (allegedly without authorization) Plaintiffs' Marks, and was authorized to issue (and did issue) corporate checks. The jury should be permitted to consider the evidence to determine whether Mederos "actively and knowingly" and "as a moving, conscious force" caused the alleged infringement. *Chanel, Inc.*, 931 F.2d at 1477–78.

For these reasons, the Undersigned **respectfully recommends** that the District Court **deny** Mederos' summary judgment motion and allow Plaintiffs' claims against Mederos to proceed to trial.

## V.      Conclusion

Genuine issues of material fact preclude summary judgment for Mederos on the issue of individual liability. The District Court should **deny** Mederos' summary judgment motion.

## VI.     Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Federico A. Moreno. Each party may file a response to the

other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on July 18, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record